# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE

NEWS RELEASE #054

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **8th day of December, 2023** are as follows:

**PER CURIAM:**

 *2023-B-00852*          *IN RE: JANEANE GORCYCA ABBOTT*

          SUSPENSION IMPOSED. SEE PER CURIAM.

SUPREME COURT OF LOUISIANA

NO. 2023-B-0852

IN RE: JANEANE GORCYCA ABBOTT

ATTORNEY DISCIPLINARY PROCEEDING

PER CURIAM

This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel ("ODC") against respondent, Janeane Gorcyca Abbott, an attorney licensed to practice law in Louisiana.

**UNDERLYING FACTS**

By way of background, respondent was employed by the Joubert Law Firm ("the firm") as a law clerk beginning in November 2014. After she was admitted to the bar in May 2015, respondent worked at the firm as an associate until March 2018. During this time, respondent practiced family law, and she was the only attorney at the firm who did so.

In February 2017, Brooke King retained the firm to handle a paternity, child custody, and support matter. Respondent filed the petition in the 18th Judicial District Court for the Parish of West Baton Rouge. The father of the minor child executed a waiver of service and entered into a stipulated judgment establishing paternity, joint custody, support, and visitation prepared by respondent, which was signed by the judge in April 2017.

Shortly thereafter, the father hired counsel to file a petition to nullify judgment and rule for modification of custody and child support. Respondent filed an answer to the petition on behalf of Ms. King and a reconventional demand seeking to modify the joint custody to sole custody. On August 14, 2017, the matter was heard by a

hearing officer, who issued a recommendation to the court on all matters, which included a recommendation of a shared custody schedule.

Ms. King instructed respondent to file an objection to the hearing officer's recommendation. Pursuant to the local court rules in the 18th JDC, the objection was due within three days of the date of the hearing, or no later than Thursday, August 17, 2017. However, respondent was unaware of the local rules in the 18th JDC and believed that under the uniform rules she had five days to file the objection. Respondent fax-filed Ms. King's objection on Friday, August 18, 2017, one day late.

After submitting the facsimile filing, respondent was required to deliver the original objection to the clerk of court, along with payment of the required fees. Pursuant to La. R.S. 13:850, the original objection and fees were due within seven days (exclusive of legal holidays) after the clerk of court received the facsimile filing, or no later than August 29, 2017.

On August 23, 2017, respondent's assistant, Stacy Carpenter, emailed Ms. King to request the payment of $226 in fees associated with the fax-filed objection. Ms. King paid the fees the same day through an electronic payment, but these funds were deposited into the firm's operating account instead of the trust account.

On August 28, 2017, Ms. Carpenter sent Ms. King another email, admonishing her for depositing the fees to the wrong account and directing her to make a payment into the trust account. Ms. King responded via email the same day and was left with the impression that the objection had been filed. Ultimately, however, the original objection was not delivered to the clerk of court and the required fees were not paid. As a result of these deficiencies, the facsimile filing had no force or effect, and the hearing officer's recommendations were signed by the court on August 30, 2017.

Beginning in October 2017, Ms. King called respondent's office several times to inquire if a court date had been scheduled based upon her objection. Ms. King

did not speak with respondent until November 2, 2017, when she and respondent had a telephone conference set by Ms. Carpenter. During the telephone conference, respondent failed to inform Ms. King that the objection had not been filed, and she led Ms. King to believe they were waiting on a court date because of difficulties with opposing counsel's schedule.

In February 2018, Ms. King's mother checked the court record. At that time, Ms. King learned her objection to the hearing officer's recommendation had never been presented to the trial judge because the fax-filed objection had not been timely filed, the original objection was never delivered to the clerk of court, and the fees had not been paid. Ms. King also learned at that time that the hearing officer's recommendation had been reduced to a final judgment signed by the trial judge on August 30, 2017. Ms. King discharged respondent via email sent on February 6, 2018.

In May 2018, Ms. King filed a complaint against respondent with the ODC. In her response to the complaint, respondent indicated that she informed Ms. King her objection had not been filed, and that she did so during their telephone conference on November 2, 2017. Respondent also stated that she informed Ms. King she could file for a modification. However, text messages sent to respondent by Ms. King after the telephone conference reflect that Ms. King continued to ask respondent about a court date, suggesting that respondent did not advise Ms. King about the true status of her case during the telephone conference. Furthermore, according to Ms. King, respondent did not discuss a modification until after Ms. King hired new counsel.

**DISCIPLINARY PROCEEDINGS**

In May 2019, the ODC filed formal charges against respondent, alleging that her conduct as set forth above violated the following provisions of the Rules of Professional Conduct: Rules 1.3 (failure to act with reasonable diligence and promptness in representing a client), 1.4 (failure to communicate with a client), 1.7 (conflict of interest: current clients), 3.2 (failure to make reasonable efforts to expedite litigation), 8.1(a)(b) (in connection with a disciplinary matter, a lawyer shall not knowingly make a false statement of material fact or fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter), 8.4(a) (violation of the Rules of Professional Conduct), and 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation). Respondent filed an answer to the formal charges in which she denied any misconduct.

In light of respondent's answer, the matter proceeded to a formal hearing on the merits.

*Formal Hearing*

The hearing committee conducted the formal hearing over three days on December 9, 2020, March 10, 2021, and March 18, 2021. Both parties introduced documentary evidence. The ODC called several witnesses to testify before the committee, including respondent's assistant, Stacy Carpenter; Tonya Lurry,[1] opposing counsel in Ms. King's case; attorney John Joubert, the owner of the law firm where respondent was employed at the time she represented Ms. King; Ms. King and her mother, Connie Banta; and local attorney Thomas McCormick. Respondent testified on her own behalf and on cross-examination by the ODC, and

---

[1] Ms. Lurry is now a judge in the 18th JDC.

4

she called attorney Jennifer Prescott, a work colleague, to testify before the committee.

*Hearing Committee Report*

After considering the evidence and testimony presented at the hearing, the hearing committee made factual findings, including the following:

1.  Respondent failed to act with reasonable diligence and promptness to ensure that Ms. King's objection to the hearing officer's recommendation was timely filed.

2.  Respondent failed to keep Ms. King reasonably informed about the status of her custody matter, failed to return Ms. King's telephone calls, and failed to respond to reasonable requests for information regarding the status of the filing of Ms. King's objection.

3.  Respondent failed to inform Ms. King that she had a potential malpractice claim for which she should seek independent counsel.

4.  Respondent was dishonest and deceitful in her communications with Ms. King. Ms. King was misled to believe that respondent was awaiting a court date and was in contact with the opposing party regarding a hearing on the purported objection to the hearing officer's recommendation.

5.  Respondent made false statements to the ODC when she stated that (a) she did not know until November 2, 2017 that the original objection was not filed; (b) she disclosed her failure to file the original objection to Ms. King on November 2, 2017; (c) she did not lead Ms. King to believe that she was waiting on a court date; and (d) she suggested to Ms. King that a request for modification could be filed.

6.  The testimony of Ms. King, her mother, Mr. Joubert, and Ms. Carpenter was credible. Respondent's conflicting testimony was found not to be credible.

5

Based upon these findings, the committee determined that respondent violated Rules 1.3, 1.4, 1.7, 3.2, 8.1(a)(b), 8.4(a), and 8.4(c) of Rules of Professional Conduct, as charged in the formal charges.

The committee determined that respondent violated duties owed to her client and the public. She acted knowingly and intentionally. Her actions caused both actual and potential harm. Relying on the ABA's *Standards for Imposing Lawyer Sanctions*, the committee determined the applicable baseline sanction is suspension.

The committee found the following aggravating factors are present in this matter: a dishonest or selfish motive, a pattern of misconduct, and submission of false evidence, false statements, or other deceptive practices during the disciplinary process. In mitigation, the committee found the following factors: absence of a prior disciplinary record, inexperience in the practice of law, and remorse.

Considering these circumstances, and the prior jurisprudence of this court in similar cases, the committee recommended that respondent be suspended from the practice of law for sixty days, followed by a one-year period of unsupervised probation and attendance at Ethics School. The committee also recommended that respondent be assessed with the costs and expenses of these proceedings.

Respondent filed an objection to the hearing committee's report.


*Disciplinary Board Recommendation*

After review, the disciplinary board determined that the pertinent factual findings made by the hearing committee are not manifestly erroneous and adopted same. The committee heard conflicting testimony on various issues and made credibility determinations which are not clearly wrong. Based on these factual findings, the board agreed respondent's conduct violated the Rules of Professional Conduct as alleged in the formal charges:

Rule 1.3 – Respondent admitted during her hearing testimony that she violated this rule by her lack of diligence in carrying out Ms. King's desire to appeal the hearing officer's recommendation.

Rule 1.4 – Respondent failed to communicate directly with Ms. King for over two months after the hearing officer's recommendation was issued, despite Ms. King's contacts with respondent's office inquiring about status and despite confusion over Ms. King's payment to the firm to cover the cost of filing the objection to the hearing officer's recommendation. Respondent finally spoke with Ms. King on November 2, 2017, only after her legal assistant unilaterally scheduled a telephone conference for respondent because Ms. King was upset and wanted information. Respondent did not explain the full situation to Ms. King and her mother in the telephone conference and further did not do so even after Ms. King continued to inquire about a court date in a text on November 9, 2017. Respondent then did not communicate at all with Ms. King from November 9, 2017 until she was discharged in February 2018.

Rule 1.7 – Respondent violated Rule 1.7(a)(2) by failing to inform Ms. King that the objection to the hearing officer's recommendation had not been timely filed and by failing to inform Ms. King of the possible existence of a malpractice action against respondent regarding which Ms. King should seek advice from independent counsel. It was only after Ms. King discharged respondent and filed a disciplinary complaint that respondent's counsel wrote to Ms. King informing her of a possible malpractice claim and suggesting that Ms. King may wish to consult an attorney regarding same.

Rule 3.2 – Respondent failed to make reasonable efforts to expedite the litigation consistent with Ms. King's interest in objecting to the hearing officer's recommendation. She did not make reasonable efforts to ensure that the objection was timely filed and a hearing date was assigned.

7

Rules 8.1 and 8.4(c) – Respondent acted dishonestly and deceitfully in not telling Ms. King that the appeal of the hearing officer's recommendation had never been perfected and in leading Ms. King to believe they were still waiting for a court date on the appeal. Respondent also gave false information to the ODC when she stated that she had no knowledge until November 2, 2017 that a judgment had been issued on the hearing officer's recommendation, and that she told Ms. King in a telephone conference on November 2, 2017 that the objection to the hearing officer's recommendation was not timely filed, that a judgment had been issued confirming the recommendation, and that she could no longer appeal the recommendation. She also gave false information to the ODC regarding the events surrounding the failed payment of the filing fee, including that her staff told her the payment issue had been taken care of and that her request for a firm check for the filing fee was denied after Ms. King made a deposit for the fee into the firm's operating account.

Rule 8.4(a) – Respondent's violation of the foregoing rules establishes the derivative violation of Rule 8.4(a).

The board agreed with the committee that respondent violated duties owed to her client and the legal profession. She acted negligently in initially missing the three-day deadline for filing the objection to the hearing officer's recommendation, but she acted knowingly in failing to follow up on the issue of the fax filing fee and to ensure the original pleading was filed to perfect the facsimile filing. Further, respondent's lack of diligence in handling the matter and communicating with Ms. King after the August 14, 2017 hearing through her termination, her failure to inform Ms. King that the objection had not been filed and a judgment had been signed, and her false statements in violation of Rule 8.1 were knowing and intentional. Respondent's conduct caused both actual and potential harm. Based on the ABA's *Standards for Imposing Lawyer Sanctions*, the board determined the baseline sanction ranges from reprimand to suspension.

The board found the following aggravating factors are present: a dishonest or selfish motive, multiple offenses, and submission of false statements during the disciplinary process. In mitigation, the board found the following factors: absence of a prior disciplinary record, inexperience in the practice of law, and remorse.

Considering these findings, and the court's prior jurisprudence discussing similar misconduct, the board agreed that the sixty-day suspension recommended by the committee is within the range of sanctions which have been imposed for similar misconduct. Although the multiple rule violations arguably could support an increased sanction, the board noted that respondent had very little experience in the practice of law and was lacking guidance at the time of the misconduct. Additionally, affidavits in the record evidence respondent's good character and her participation in significant community volunteer work.

Accordingly, the board recommended respondent be suspended from the practice of law for sixty days, followed by a one-year period of unsupervised probation and attendance at Ethics School. The board further recommended that respondent be assessed with the costs and expenses of this matter.

Respondent filed an objection to the board's recommendation. Accordingly, the case was docketed for oral argument pursuant to Supreme Court Rule XIX, § 11(G)(1)(b).

**DISCUSSION**

Bar disciplinary matters fall within the original jurisdiction of this court. La. Const. art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. *In re: Banks*, 09-1212 (La. 10/2/09), 18 So. 3d 57. While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the

9

manifest error standard is applicable to the committee's factual findings. *See In re: Caulfield*, 96-1401 (La. 11/25/96), 683 So. 2d 714; *In re: Pardue*, 93-2865 (La. 3/11/94), 633 So. 2d 150.

The record reveals that respondent neglected her client's legal matter, failed to communicate with her client, and failed to inform her client that she had a potential malpractice claim for which she should seek independent counsel. Respondent also misled her client and made false statements to the ODC during its investigation. This conduct violates the Rules of Professional Conduct as charged in the formal charges.

Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent's actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. *Louisiana State Bar Ass'n v. Reis*, 513 So. 2d 1173 (La. 1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances. *Louisiana State Bar Ass'n v. Whittington*, 459 So. 2d 520 (La. 1984).

Respondent violated duties owed to her client and the legal profession. Her actions were negligent, knowing, and intentional, and caused actual and potential harm. The applicable baseline sanction is suspension. The aggravating and mitigating factors found by the disciplinary board are supported by the record. In particular, we find that respondent's inexperience in the practice of law contributed significantly to her misconduct.

Considering these circumstances, we find the appropriate sanction in this matter is a thirty-day suspension from the practice of law, followed by a one-year period of probation with Ethics School.

**DECREE**

Upon review of the findings and recommendations of the hearing committee and the disciplinary board, and considering the record, briefs, and oral argument, it is ordered that Janeane Gorcyca Abbott, Louisiana Bar Roll number 36189, be and she hereby is suspended from the practice of law for thirty days. Following completion of the suspension, respondent shall be placed on unsupervised probation for one year, during which time she must attend and successfully complete the Louisiana State Bar Association's Ethics School. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court's judgment until paid.